IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**MARGARETTE DUVERGER,** individually and on behalf of all others similarly situated,

*Plaintiff,*

*v.*

**1 OAK HOME IMPROVEMENT INC.,** a Florida corporation,

*Defendant.*

Case No.

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Plaintiff Margarette Duverger ("Plaintiff Duverger" or "Duverger") brings this Class Action Complaint and Demand for Jury Trial against Defendant 1 Oak Home Improvement Inc., ("Defendant" or "1 Oak") to stop the Defendant from violating the TCPA and Florida Telephone Solicitation Act ("FTSA") by training its agents to place calls to consumers without consent including calls to phone numbers that are registered on the National Do Not Call registry ("DNC") and unsolicited calls that are placed to consumers using an autodialer in violation of the FTSA. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Duverger, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Duverger is a resident of Miramar, Florida.

2. Defendant 1 Oak is a corporation registered in Florida, with its headquarters located in Boynton Beach, Florida. Defendant 1 Oak conducts business throughout Florida.

**JURISDICTION AND VENUE**

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction and venue is proper since the Defendant has its headquarters in this District and the wrongful conduct giving rise to this case was directed from the Defendant into this District where the Plaintiff also resides.

**INTRODUCTION**

5. As the Supreme Court explained at the end of its term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 4.1 billion robocalls were placed in September 2025 alone, at a rate of 135.1 million per day. www.robocallindex.com (last visited November 2, 2025).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

13. Defendant 1 Oak provides constructions services to consumers that include impact windows, roofing, HVAC and impact doors.[3]

14. Defendant 1 Oak generates business by placing cold calls to consumers to generate business.

15. This includes placing cold calls to phone numbers that are registered on the DNC, as per Plaintiff's experience.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.1oakfl.com/

16. 1 Oak employees have posted job reviews and descriptions including descriptions of cold calling they engaged in to generate business online, including:

**Mitchell Gordon** (AMERICA FIRST)
I'm a creative researcher, who's an out-of-the-box thinker, with skills that can help turn a lemon into an apple pie.

**Administrative Assistant**
1 OAK HOME IMPROVEMENT · Full-time
Aug 2022 - Oct 2024 · 2 yrs 3 mos
Boynton Beach, Florida, United States · On-site

Made cold call outbound calls to homeowners and communicated the opportunity to do home improvements through my company, I updated the database with qualifying information while speaking to them. I used a Consultative approach and carried a dialog from opening to closing and setting the appointment. Also, I called on the Homeowners that canceled appointments and rescheduled them.

I called the appointments daily, to do final confirmations and dispatched out sales people to their homes. I worked under pressure when we had limited Sales agents on selective days.

I assisted as a Subject Matter Expert for Home Improvement and our Companies way of life. I was the go to person with the call center staff.

I pulled titles from County Property Appraiser websites and updated the CRM for dispatch. I listened to recorded calls to make sure leads were valid.

I was also a Specialist, when a homeowner required more information before booking an appointment. I was called to answer questions for customers on the phone.

I assisted the Call Center with researching Home addresses and contact information when needed. [4]

**Sarahlee Benjamin**
--

**Telemarketer**
1 Oak Home Improvement
Apr 2023 - May 2024 · 1 yr 2 mos
Boynton Beach, Florida, United States

Conducted cold calls to potential clients, successfully setting up appointments for sales representatives

Used CRM software to input and verify customer data to ensure accurate information for follow-up

Demonstrated excellent communication skills while handling customer queries and concern

**Communication, Multitasking and +1 skill** [5]

17. In fact, job postings for a telemarketing manager include references to a "team of telemarketers":

---

[4] https://www.linkedin.com/in/imakethingshappen/
[5] https://www.linkedin.com/in/sarahlee-benjamin-bab79a376/

1 OAK Home Improvement Inc.

**Telemarketing Manager**

Boynton Beach, FL · $25.00 - $28.00 Per Hour (Employer provided)

**Position Overview:**
The Telemarketing Room Manager supervises and energizes a team of telemarketers tasked with setting appointments with homeowners for assessments on impact windows, doors, roofing, and PACE financing programs. The ideal candidate is highly energetic, innovative, and committed to continuously motivating the team to achieve high performance and meet campaign goals.

**Key Responsibilities:**

- Supervise, train, and motivate a team of telemarketers to consistently meet or exceed appointment-setting targets.
- Maintain a high-energy presence, inspiring the team and fostering a positive, motivated work environment.
- Develop and implement creative strategies, incentives, and recognition programs to keep team members engaged and motivated.
- Monitor call quality, assess team performance metrics, and provide ongoing coaching and feedback.
- Develop targeted scripts and messaging tailored to the PACE program, impact windows and doors, and roofing services.
- Stay informed about the specifics of the PACE financing program, impact windows and doors, and roofing industry details to effectively communicate value propositions.
- Address and resolve team or customer issues promptly, maintaining professionalism and enthusiasm.
- Ensure compliance with relevant regulations and company policies.
- Maintain a pulse on team morale and continuously seek new ways to motivate and energize the team. [6]

18. In April of 2025, an employee posted a complaint in a call center rep job review in which they complain about using an old, overused call list:

★★★☆☆ April 3, 2025

**Nice folks, but unrealistic expectations make for an unpleasant experience.**

**Call Center Rep.** Boynton Beach, FL

What is the best part of working at the company?
The boss lady was a happy go lucky gal.

What is the most stressful part about working at the company?
High expectations with an old, overused, call list. [7]

19. The Boca Raton news website posted an article online warning people about cold calls from 1 Oak, also warning that 1 Oak uses different outbound numbers:

---

[6] https://www.glassdoor.com/job-listing/telemarketing-manager-1-oak-home-improvement-inc-JV_IC1154154_KO0%2C21_KE22%2C48.htm?jl=1009863483248&utm_source=chatgpt.com
[7] https://www.indeed.com/cmp/1-Oak-Home-Improvement-Inc./reviews

bocanewsnow.com/2023/04/04/consumer-alert-do-not-answer-call-from-boca-raton-number/

BY: STAFF REPORT | BocaNewsNow.com

BOCA RATON, FL (BocaNewsNow.com) (Copyright © 2023 MetroDesk Media, LLC) — A company that calls itself "One Oak" is cold calling residents in South Palm Beach County, claiming to be calling on behalf of the State of Florida to offer roof and other construction repairs.

The company is not calling on behalf of the state. We encourage you to not answer the call.

Your Caller ID results may vary, but outcalls are coming from numbers that include 561-680-6211. Once this article appears, it is more likely than not that the call center will change its outbound number. We always encourage readers to NOT answer calls from numbers they do not know. If you receive a call from a 561 number that is unknown to you — let it go to voicemail. If someone really needs you, they'll leave a message.

"1 Oak Home Improvement" is registered with the Florida Dept. of Corporations as being owned by Alvaro Ramirez. The outbound call agents claim they are offering you state funds for home repairs and that you must work with their company. BocaNewsNow.com encourages you to speak with an insurance professional before engaging any company that claims to be offering repairs sanctioned by the State of Florida. [8]

20. Consumers have posted complaints online about unsolicited calls they received from 1 Oak despite having their phone number registered on the DNC, including:

- "I was contacted (***cold-call*** or telemarketing) by 1 Oak Home Improvement. The number that appeared on my caller ID from the company was ************. I answered the call, and the sales agent immediately started with his script. As soon as he paused, I immediately responded '***I am on the National Do-Not-Call and the Florida Do-Not-Call registries***. Please remove my number and do not call this number again, as it is a violation.' The caller responded 'Well I don't see that on my list. So have you received the letter in the mail about the approved county programs....'Again, I told him that he was not supposed to contact me. His response was 'Well, we are going to keep calling until you answer these questions.' To which I kindly responded with the applicable laws, and repercussions.He hung up. My concern is the (lack of) training and business model of 1 Oak Home. How do they FAIL to train their telemarketing agents on the importance and respect of those on the *** registries?"[9] (emphasis added)

---

[8] https://bocanewsnow.com/2023/04/04/consumer-alert-do-not-answer-call-from-boca-raton-number/

[9] https://www.bbb.org/us/fl/boynton-beach/profile/remodeling/1-oak-home-improvement-inc-0633-92042767/complaints

21. In addition to the above, 1 Oak is placing unsolicited calls to consumers using an autodialer, as per Plaintiff's experience.

22. In response to these calls, Plaintiff Duverger brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA and FTSA, as well as an award of statutory damages to the members of the Classes and costs.

**PLAINTIFF DUVERGER'S ALLEGATIONS**

23. Plaintiff Duverger is the subscriber and sole user of the cell phone number ending with 9074.

24. Plaintiff Duverger registered her cell phone number on the DNC on October 10, 2006.

25. Plaintiff Duverger uses her cell phone number for personal use only as one would use a landline telephone number in a home. Such use includes speaking to family and friends.

26. Plaintiff Duverger's cell phone number is not associated with a business and is not used for business-related purposes.

27. Plaintiff Duverger pays for the use of her cell phone personally. It is not reimbursed by a business.

28. Plaintiff Duverger resides in Florida and her cell phone number has a 305 Florida area code.

29. On July 5, 2023 at 11:29 AM, Plaintiff Duverger received an unsolicited call to her cell phone from 954-594-8048.

30. When Plaintiff answered this call, she heard silence before the call disconnected a few seconds later indicating the use of an autodialer.

31. When 954-594-8048 was dialed in 2023, it was answered by an employee who identified the company name 1 Oak Home Improvement.[10]

32. On January 21, 2025 at 11:49 AM, Plaintiff Duverger received an unsolicited call to her cell phone from 786-944-0321.

33. This call was not answered.

34. Plaintiff Duverger called this number back later on January 21, 2025.

35. An employee answered the call and identified the company as 1 Oak Home Improvement.

36. The employee then began a sales pitch asking if Plaintiff Duverger required impact windows or other remodeling needs.

37. Plaintiff Duverger told the employee that her phone number is registered on the DNC and requested that Defendant never call her cell phone back again.

38. Despite Plaintiff's clear stop request, she received a 3rd unsolicited call to her cell phone on October 20, 2025 at 12:19 PM from 954-694-7019.

39. When 954-694-7019 is dialed, an employee identifies the company name 1 Oak Home Improvement.[11]

40. Plaintiff Duverger has never provided her cell phone number to 1 Oak.

41. Plaintiff Duverger never provided consent for 1 Oak to call her cell.

42. The unauthorized solicitation telephone calls that Plaintiff Duverger received from or on behalf of Defendant 1 Oak have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

---

[10] Based on an investigation conducted by Plaintiff's attorneys
[11] Based on an investigation conducted by Plaintiff's attorneys

43. Seeking redress for these injuries, Plaintiff Duverger, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA.

**CLASS ALLEGATIONS**

44. Plaintiff Duverger brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) 1 Oak called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.
>
> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant 1 Oak called more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the Defendant's records reflect the person requested that they stop calling.
>
> **Florida DNC Class**: All persons in Florida who from four years prior to the filing of this action through class certification (1) whose telephone numbers appear on the then-current "no sales solicitation calls" list, and (2) who received unwanted telephonic sales calls from or on behalf of the Defendant.
>
> **Florida Autodial Class**: All persons in Florida who from four years prior to the filing of this action through class certification (1) who received unwanted telephonic sales calls from or on behalf of the Defendant (2) using the same equipment or type of equipment utilized to call the Plaintiff.

45. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or

released. Plaintiff Duverger anticipates the need to amend the Class definitions following appropriate discovery.

46. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

47. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) whether Defendant or its agents placed unsolicited calls to Plaintiff and members of the Do Not Call Registry Class and Florida DNC Class without first obtaining consent to make the calls;

(c) whether Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(d) whether Defendant placed calls to the Plaintiff and members of the Autodial class without first obtaining consent to make the calls;

(e) whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(f) whether the calls constitute a violation of the TCPA and FTSA:

(g) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

48. **Adequate Representation**: Plaintiff Duverger will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Duverger has no interests antagonistic to those of the Classes, and the

Defendant has no defenses unique to Plaintiff. Plaintiff Duverger and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Duverger nor her counsel have any interest adverse to the Classes.

49. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Duverger. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Duverger and the Do Not Call Registry Class)**

50. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

51. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber

who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

52. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

53. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Duverger and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

54. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Duverger and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

55. As a result of Defendant's conduct as alleged herein, Plaintiff Duverger and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

56. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Duverger and the Internal Do Not Call Class)**

57. Plaintiff repeats and realleges paragraphs 1-49 of this Complaint and incorporates them by reference herein.

58. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf

> the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

59. Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

60. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

61. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## THIRD CLAIM FOR RELIEF
**Florida Telephone Solicitation Act**
**(Violation of the Fla. Stat. § 501.059)**
**(On Behalf of Plaintiff Duverger and the Florida DNC Class)**

62. Plaintiff repeats and realleges paragraphs 1-49 of this Complaint and incorporates

them by reference herein.

63. Plaintiff Duverger brings this claim individually and on behalf of the Florida DNC Class Members against the Defendant.

64. It is a violation of the FTSA to "make or cause to be made any unsolicited telephonic sales call to any residential, mobile, or telephonic paging device telephone number if the number for that telephone appears in the then-current quarterly listing published by the department." Fla. Stat. § 501.059(4).

65. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

66. In violation of the FTSA, Defendant made and/or caused to be made unsolicited telephone sales calls to Plaintiff Duverger and other members of the Florida DNC Class, despite their telephone number appearing on the quarterly listing published by the Department.

67. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff Duverger and Class members were harmed and are each entitled to a minimum of $500.00 in damage for each violation. Plaintiff Duverger and the Class members are also entitled to an injunction against future calls. *Id.*

## <u>FOURTH CLAIM FOR RELIEF</u>
**Florida Telephone Solicitation Act**
**(Violation of the Fla. Stat. § 501.059)**
**(On Behalf of Plaintiff Duverger and the Florida Autodial Class)**

68. Plaintiff repeats and realleges paragraphs 1-49 of this Complaint and incorporates them by reference herein.

69. Plaintiff Duverger brings this claim individually and on behalf of the Autodial Class Members against the Defendant.

70. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

71. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

72. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

73. Defendant failed to secure prior express written consent from Plaintiff Duverger and members of the Autodial Class.

74. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to the Plaintiff and the Autodial Class members without Plaintiff's and the Class members' prior express written consent.

75. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff Duverger and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers.

76. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff Margarette Duverger and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff Duverger and the Class members are also entitled to an injunction against future calls. *Id.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA and FTSA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Duverger requests a jury trial.

Respectfully Submitted,

**MARGARETTE DUVERGER**, individually and on behalf of all others similarly situated,

DATED this 11th day of November, 2025.

By: /s/ *Stefan Coleman*

Stefan Coleman (Fla. Bar No. 30188)
COLEMAN PLLC
18117 Biscayne Blvd
Suite 4152
Miami, FL 33160
(877) 333-9427
law@stefancoleman.com

Avi R. Kaufman (Fla. Bar No. 84382)
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*